## SHAMROCK TOWING CO., Inc., v. CITY OF NEW YORK et al.

### THE GREENBAY.

District Court, S. D. New York. November 3, 1928.

Single & Single, of New York City, for libelant.

George P. Nicholson, Corp. Counsel, of New York City, for respondent City of New York.

Macklin, Brown, Lenahan & Speer, of New York City, for respondent Flannery Towing Line, Inc.

FRANK J. COLEMAN, District Judge. Not having been furnished with a copy of the minutes, I am unable to be as specific in the citation of testimony as I would like to be. In this connection I wish to correct an error in the city's brief. It was not the court that requested the submission of briefs, but counsel for the city itself who expressly made the request after the court had intimated its views on the questions involved.

Libelant chartered a scow to the city, and, while the latter was using it in the transportation of ashes and rubbish, it was damaged by a fire which originated on an adjacent scow in the same tow. Two questions of fact are presented: (1) Whether the city used due care in the loading of the scows to prevent fire; and (2) whether the captain of the tug which was towing the scows negligently maneuvered the tow in such a way as to cause the fire to spread from the scow on which it originated to the libelant's scow.

On the first question I find that the city did not take reasonable precautions to prevent the fire. It originated in the load of ashes and rubbish, and there was a well-recognized danger of it. The mixing of ashes with rubbish on dump scows gives rise to a danger of fire which the city was thoroughly familiar with. The question presented by this case is whether or not the measures testified to by the city employees were all that a person of reasonable prudence would have taken to obviate the danger. I do not believe that they were. The wetting down which was given to the loads was too superficial and uncertain in its relation to the amount of the load. One reason for not employing a more thorough and systematic method of wetting the load was, as expressed by the city's employees, that it would interfere with the profits of the trimmers who salvage part of the rubbish. Another reason was that it might, under certain circumstances, cause a load to split. I do not believe that either of these reasons is a sufficient excuse for not having a more careful and systematic wetting of the load, or at least such parts of it as came in contact with the rubbish. It may be that from a standpoint of economics the city finds it advisable to dispense with the more thorough precautions which due care of the property of others requires; but, when a loss results from that, I believe the city should bear the burden.

The city urges that libelant assumed the risk of fire resulting from the use to which the scow was put. I am unable to see the slightest evidence that the libelant assumed the risk of fire resulting from a failure on the part of the city to use reasonable care.

On the question as to whether the captain of the tug was negligent in maneuvering the tow after the discovery of the fire on the scow adjacent to libelant's, it appears

that the tow was headed upstream with libelant's scow directly to windward of the scow on which the fire started. A wind of 45 miles an hour was blowing at the time. After the discovery of the fire on the original scow, the tug turned to windward, so that libelant's scow completely lost the protection of the wind. In fact, considering the strength of the wind and the circumstance that libelant's scow was piled high with rubbish, it was impossible for it to escape fire in the position in which the tug placed it. I find that there was no excuse for this, and that the respondent Flannery Towing Line must also be held at fault.

Settle interlocutory decree on notice.